1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARTIN ONTIVEORS,                         No.  2:14-cv-1423 JAM KJN P

12                  Petitioner,

13            v.                                FINDINGS and RECOMMENDATIONS

14   AMY MILLER, Warden,

15                  Respondent.

16

17   I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2012 conviction for

20   driving under the influence.  Petitioner claims that he suffered ineffective assistance of counsel in

21   violation of the Sixth Amendment, and claims that the prosecution committed misconduct in

22   violation of petitioner's due process rights.  After careful review of the record, this court

23   concludes that the petition should be denied.

24   II.  Procedural History

25          On October 4, 2012, a jury found petitioner guilty of driving under the influence in

26   violation of California Vehicle Code §§ 23152(a) and (b).[1]  (Clerk's Transcript on Appeal ("CT")

27   _____

28   [1]  Section 23152(a) and (b) reads, in pertinent part:
         (a)  It is unlawful for a person who is under the influence of any alcoholic beverage to drive a

                                           1

at 159-53.)  The jury also found petitioner suffered a prior felony conviction on August 3, 2007, for driving under the influence (CT at 161), and three prior convictions for driving under the influence (CT at 164).  On October 26, 2012, petitioner was sentenced to seven years in state prison.  (ECF No. 1 at 1.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  "[D]ue to an anomaly in the rendition and recordation of the jury's verdicts," the Court of Appeal struck counts three and four from petitioner's conviction, but otherwise affirmed the modified judgment.  (LD 4 at 5.)

On July 2, 2013, prior to the conclusion of direct appeal, petitioner filed a petition for writ of habeas corpus in the Sierra County Superior Court.  (LD 7.)  On August 2, 2013, the petition was denied.  (LD 8.)

On November 4, 2013, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, adding new claims not raised on direct appeal.  (LD 9.)  Such petition was denied without comment on January 29, 2014.  (LD No. 10.)

The instant petition was filed on February 24, 2014.  (ECF No. 1.)  Respondent filed an answer (ECF No. 12); petitioner filed a reply (ECF No. 16).

III.  Facts[2]

In its unpublished memorandum and opinion modifying and affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following background and factual summary:

////

---

vehicle.

(b) It is unlawful for a person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

Id.

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Ontiveros, No. C072538 (Sept. 12, 2013), a copy of which was lodged by respondent as LD 4 on September 22, 2014.

**Prosecution Case-in-chief**

On July 5, 2012, at 6:25 p.m., Sierra County Sheriff's Deputy Matthew Boyd was driving a marked patrol car northbound on Highway 49 between Downieville and Sierra City. Deputy Boyd was driving behind a small red sport utility vehicle (SUV) driven by defendant. The SUV "crossed over the double yellow line by the entire length of the car and returned to his lane as if it was cutting a corner." Deputy Boyd followed the SUV about a "mile, mile and a half" and then turned on his headlights (but not his emergency lights). Defendant activated his right turn signal and started trying to pull over. But then he deactivated the turn signal and continued down the road. On three successive occasions, defendant activated his right turn signal and started to pull over but then made minor corrections within his lane and continued down the road.

Eventually, Deputy Boyd activated his emergency lights and defendant stopped at a large turnout. Deputy Boyd asked defendant for his driver's license, and defendant said he did not have one. When defendant started to get out of the SUV, Deputy Boyd "immediately noticed a heavy odor of alcohol emitting from his breath and person." Defendant was barefoot and took slow deliberate steps when he got out of the SUV.

Deputy Boyd asked defendant whether he had been drinking; defendant answered in the affirmative. Defendant said he had consumed approximately four beers at Bullards Bar Dam in Yuba County and one beer more recently in the SUV. Defendant's eyes were red, watery, and bloodshot; and he continually smelled of alcohol.

Defendant explained that he did not have a driver's license because he "had a DUI in the past" and had not paid off approximately $8,000 in fines.

Deputy Boyd conducted field sobriety tests to determine defendant's level of intoxication and his ability, or inability, to drive. During the tests, Deputy Boyd asked defendant three or four times whether he would like to stop to get his shoes from the SUV; each time defendant declined.

Deputy Boyd performed a horizontal gaze nystagmus (HGN) test, which requires the subject to move his eyes, not his head, as he follows the movement of the officer's finger. At a point in the test, the subject's eyes will begin to bounce back and forth. Deputy Boyd carried a card that correlates the point at which the eyes begin bouncing to the amount the subject had to drink. According to the card, defendant's blood-alcohol content was 0.20 percent. Deputy Boyd did not bring the card to the trial.

Deputy Boyd also performed a "Romberg balance standing test" that required defendant to close his eyes, tilt his head back, and count to 30. During the test, defendant swayed back and forth two inches, which suggested he was under the influence of an alcoholic beverage.

3

Deputy Boyd offered to do a preliminary alcohol screening (PAS) test, but defendant refused multiple times to do the test. The last time he refused to perform the test, defendant stated "he would be over the limit and the test would not be necessary."

Based on his training and experience, as well as defendant's general demeanor, the strong smell of alcohol, and all the field sobriety tests, Deputy Boyd believed that defendant was too intoxicated to continue driving.

Deputy Boyd handcuffed defendant and placed him in the back of the patrol car. Then Deputy Boyd spoke with defendant's passenger, Michelle Killian, who agreed to take a PAS test. She tested as 0.02 percent blood alcohol, which is "way under the limit." She was allowed to drive the SUV, and she followed the patrol car back to the sheriff's office.

Deputy Boyd tried to test defendant's breath using an intoxilyzer. A person performing this test must blow air into the machine for at least one-half second and must deliver 1.2 liters of air. If the person performs as required, the machine will process the test and then ask for a second breath test. If the person does not do as required, the machine asks that the test be repeated. The machine determines the percent of alcohol in a person's blood by measuring grams of alcohol per 210 liters of breath. (People v. Williams (2002) 28 Cal.4th 408, 411, fn. 1 (Williams).)

Defendant attempted to perform the breath test 12 to 14 times. On several attempts he failed to blow sufficient air into the machine. On some attempts he appeared deliberately to inhale small, insufficient amounts of air before exhaling into the machine. On other attempts he appeared to manipulate his tongue in order to limit the flow of air into the machine. The machine reported that one attempt was successful and the others were insufficient or in error.

The successful test, at 7:07 p.m., showed a blood-alcohol level of 0.22 percent. Based on this reading, a criminalist opined that defendant was too impaired to safely operate a motor vehicle. Defendant's blood-alcohol level at 6:00 p.m., prior to his arrest, would have been 0.23 percent. In order for someone of defendant's size to have a blood-alcohol level of 0.22 percent, that person would have to have consumed approximately 15 shots of 86–proof alcohol or 15 bottles of beer.

Deputy Boyd wanted to get another breath sample, but defendant stated that he could not give another sample. Defendant also did not submit to a blood test. For reasons of employee safety, the clinic that does blood tests for Sierra County will not force a blood test upon a subject who does not consent to the test.

Defendant became quite upset when Deputy Boyd told him that, if he had multiple prior DUI's, it "would be quite some time" before defendant was released. Defendant was upset because he wanted to go fishing.

4

When Deputy Boyd brought defendant to the jail, correctional officer Gary McFarland observed that defendant's speech was a bit slurred, his eyes were a bit bloodshot and watery, and his breath smelled of alcohol. McFarland had been trained to recognize people who are under the influence of alcohol, and he has dealt with "hundreds and hundreds" of people who are under the influence.

**Defense**

Michelle Killian, the girlfriend of defendant, testified for the defense. About 2:00 to 2:30 p.m., she picked up defendant to go fishing. The two left Oroville and she drove them to Lake Francis. The trip took one hour and 20 minutes. They each drank four alcoholic beverages and stayed at Lake Francis for three to three and a half hours.

Killian testified that she and defendant left Lake Francis at "four" or 4:30 p.m. They were headed to Gold Lake. Killian was not familiar with the territory so she let defendant drive, even though she knew he did not have a license. They did not stop at Bullards Bar Dam.

Killian testified that there had been something wrong with the alignment mechanism of her SUV. Defendant said he could "make it so easier on" the SUV by "straighten[ing] out" the tight turns on the winding road. Killian did not recall the SUV going "all the way over the center line, the whole width of the car." Instead, she remembered the two driver's side tires going over the center line.

Killian testified that defendant has a back problem. She recalled that the officer had asked defendant when he last drank a beer. Defendant replied that he "was just about ready to crack one open." Killian clarified that she does not let anyone drink and drive in her car.

Killian claimed her SUV smelled like beer because she had placed the empty cans from Lake Francis in the back of the SUV for recycling and she had collected additional cans.

Killian testified that defendant was arrested when he refused to take the PAS test at the side of the road. The officer gave Killian a breathalyzer test, and she was allowed to drive her SUV. Killian testified that she and defendant had consumed the same quantity of beer at Lake Francis.

People v. Ontiveros, 2013 WL 4855057, *1-3 (Cal. App. 3 Dist., Sept. 12, 2013).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

5

application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may circuit precedent be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Marshall, 133 S. Ct. at 1451.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

////

6

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Taylor, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

////

---

[3]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

§ 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 131 S. Ct. at 784-85.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny

1  relief." Richter, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . .

2  could have supported, the state court's decision; and then it must ask whether it is possible

3  fairminded jurists could disagree that those arguments or theories are inconsistent with the

4  holding in a prior decision of [the Supreme] Court." Id. at 786.  The petitioner bears "the burden

5  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.

6  Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

7  　　　When it is clear, however, that a state court has not reached the merits of a petitioner's

8  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

9  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

10  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

11  V.  Petitioner's Claims

12  　　　A.  Ineffective  Assistance of Counsel

13  　　　Petitioner raises multiple claims of alleged ineffective assistance of counsel, only one of

14  which was decided in a reasoned decision by the state court.  Thus, the undersigned will first set

15  forth the legal standards governing these claims, and will then address each claim individually

16  below.

17  　　　The clearly established federal law for ineffective assistance of counsel claims is

18  Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant

19  must show that (1) his counsel's performance was deficient and that (2) the "deficient

20  performance prejudiced the defense." Id. at 687.  Counsel is constitutionally deficient if his or

21  her representation "fell below an objective standard of reasonableness" such that it was outside

22  "the range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal

23  quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

24  fair trial, a trial whose result is reliable.'" Richter, 131 S. Ct. at 787-88. (quoting Strickland, 466

25  U.S. at 687).

26  　　　A reviewing court is required to make every effort "to eliminate the distorting effects of

27  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

28  conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 131 S.

1   Ct. at 789.  Reviewing courts must also "indulge a strong presumption that counsel's conduct falls

2   within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  This

3   presumption of reasonableness means that the court must "give the attorneys the benefit of the

4   doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

5   may have had for proceeding as they did."  Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011)

6   (internal quotation marks and alterations omitted).

7          Prejudice is found where "there is a reasonable probability that, but for counsel's

8   unprofessional errors, the result of the proceeding would have been different."  Strickland, 466

9   U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

10  outcome."  Id.  "The likelihood of a different result must be substantial, not just conceivable."

11  Richter, 131 S. Ct. at 792.  A reviewing court "need not determine whether counsel's

12  performance was deficient before examining the prejudice suffered by the defendant as a result of

13  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

14  lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949,

15  955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

16         Under AEDPA, "[t]he pivotal question is whether the state court's application of the

17  Strickland standard was unreasonable."  Id. at 785.  "[B]ecause the Strickland standard is a

18  general standard, a state court has even more latitude to reasonably determine that a defendant has

19  not satisfied that standard."  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

20                    1.  Prior Conviction Allegations

21         Petitioner contends that he was deprived of his Sixth Amendment right to counsel by

22  defense counsel's failure to seek bifurcation of petitioner's prior conviction allegations, or to

23  "simply admit" the prior convictions outside of the jury's presence.  (ECF No. 1 at 4, 30.)

24  Petitioner argues that the prosecution reminded the jury about the prior convictions in the opening

25  statement, but defense counsel failed to address them.  (ECF No. 1 at 39.)  Petitioner also

26  contends that defense counsel should have moved to exclude petitioner's admissions concerning

27  these prior convictions.  (ECF No. 1 at 39-41.)  Petitioner argues that he was prejudiced by the

28  court reading the charges involving prior convictions to the jury, as well as by the "copious

evidence" the jury heard about the prior convictions.  (ECF No. 1 at 44-45.)  Petitioner contends there could be no reasonable or tactical reason to support defense counsel's decision not to seek bifurcation of the prior convictions or, in the alternative, to stipulate to their truth.  (ECF No. 1 at 45.)

Respondent counters that the state court's rejection of these claims was neither contrary to nor an unreasonable application of clearly established federal law.  Respondent argues that the state court properly applied Strickland, and reasonably found petitioner failed to establish a reasonable probability of prejudice because the evidence of petitioner's guilt was overwhelming. In addition, respondent contends that petitioner demonstrated clear consciousness-of-guilt behavior, including the 12 to 14 attempts to adequately perform the intoxilyzer test, his apparently intentional failure to deliberately inhale sufficient air before exhaling into the machine, and the use of his tongue to restrict air flow into the machine.  (ECF No. 12 at 18.)  In addition, respondent points out that the 0.22 blood-alcohol level was nearly three times the legal limit. Respondent argues that such overwhelming evidence supports the state court's conclusion that petitioner failed to demonstrate that but for the admission of his prior convictions, the outcome would have been different.

In reply, petitioner argues that the felony driving under the influence provisions of California Vehicle Code § 23175 are penalty provisions and do not prescribe elements of the underlying offense; thus the jury was not entitled to learn of petitioner's prior driving under the influence convictions until after it had decided petitioner's guilt in the instant offense.  (ECF No. 16 at 11, citing LD 9 at 22.)  Petitioner contends that because he did not testify at trial, he would not be impeached by the convictions, and the failure of defense counsel to file a motion to bifurcate deprived petitioner of the trial court's consideration of the extreme prejudice petitioner would suffer by the admission of the prior convictions which were identical to the charged offenses, fairly recent, and inflammatory given petitioner's three year, eight month prison term on the prior felony driving under the influence conviction.  (ECF No. 16 at 11, citing LD 9 at 23.) Petitioner contends that the California Legislature is concerned with the problem of prejudice when a jury learns of a prior conviction, as expressed in California Penal Code Section 1025.

a. <u>State Court Opinion</u>

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant contends his trial counsel rendered ineffective assistance when he failed to request bifurcation of his three prior DUI convictions. He further contends trial counsel was ineffective for having failed to stipulate to the allegations' truth so that the jury would not learn about the priors. Defendant also claims trial counsel rendered ineffective assistance by failing to seek exclusion of his statements about his prior convictions and the fact he had served a prior prison term for felony DUI. In a separate argument, defendant claims trial counsel's ineffective assistance was prejudicial. This last claim is dispositive.
>
> A. Background
>
> Prior to trial, the prosecutor stated that he anticipated submitting some prior convictions in his case-in-chief. The prosecutor identified DUI priors from Sutter, Shasta, and Butte Counties. The prosecutor did not seek to admit a Fresno County prior conviction of armed robbery or a Sacramento County prior conviction of burglary during the case-in-chief.
>
> Defense counsel did not seek to bifurcate the trial of the DUI priors. The trial court found the DUI priors were admissible. The jury received a redacted version of the information that did not include the prison term and strike allegations.
>
> In his opening statement, the prosecutor told the jury that defendant was charged with felony DUI because he had "three prior convictions within 10 years," and because he had "a prior felony [DUI] within 10 years."
>
> During trial, Deputy Boyd testified that defendant said he did not have a driver's license because he had not paid off about $8,000 in fines from a DUI case. Deputy Boyd also recounted defendant's statement that he "had a prior DUI" and had been through the process before. Deputy Boyd further recalled that defendant had become less cooperative when he was told he would not be released due to his "multiple DUI's."
>
> In his opening summation, the prosecutor argued that the third prong of his case was "prior intoxication." He discussed defendant's three prior convictions, including the conviction of DUI with injury that resulted in a prison commitment of three years eight months.
>
> In his summation, defense counsel argued, "don't let your consideration of the prior convictions that have been mentioned here, don't let that cloud affect your analysis of the facts of this

case. They have to rest on their own laurels. [¶] So, you know, it is a bit prejudicial to hear about prior DUI's, and assuming because he has priors, he must be guilty in this case. Don't allow yourself to do that."

The trial court instructed the jury that it could "[c]onsider the evidence presented on these [DUI prior] allegations only when deciding whether the defendant was previously convicted of the crimes alleged. Do not consider this evidence for any other purpose." (CALCRIM No. 2125.)

B. Analysis

"'"In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.' [Citations.] Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"'" (People v. Salcido (2008) 44 Cal.4th 93, 170 (Salcido).) "Finally, 'there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order [set forth above] or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'" (People v. Cox (1991) 53 Cal.3d 618, 656.)

Defendant has not shown any reasonable probability that, but for admission into evidence of the prior convictions and prison term, the result of the proceeding would have been different. (Salcido, supra, 44 Cal.4th at p. 170.) The evidence showed that defendant had been driving the SUV when it crossed over the double yellow line by the entire length of the car. Defendant's eyes were red, watery, and bloodshot, and he emitted a heavy odor of alcohol from his breath and person. Defendant admitted to Deputy Boyd that he had been drinking, most recently a beer inside the SUV he had been driving.

Defendant's conduct during the subsequent intoxilyzer test raised an inference of his consciousness of his guilt. Defendant attempted to perform the breath test 12 to 14 times. On several attempts he failed to blow sufficient air into the machine. On some attempts he

13

appeared deliberately to inhale small, insufficient amounts of air before exhaling into the machine. On other attempts he appeared to manipulate his tongue in order to limit the flow of air into the machine.

The intoxilyzer also provided direct evidence of defendant's guilt. The machine reported that one of defendant's multiple efforts to take the test was successful. This test showed that defendant had a blood-alcohol level of 0.22 percent, which is almost three times the legal limit.

Defendant counters that "there was only one breath test, when two breath tests are required under title 17 of the California Code of Regulations." In other words, we should ignore the one valid test because his subterfuge invalidated the others. The argument earns high marks for chutzpah. (E.g., Lewis v. County of Sacramento (2001) 93 Cal.App.4th 107, 113.) As defendant concedes, the lack of a second test as required by the regulation does not make the existing test inadmissible. (Williams, supra, 28 Cal.4th at p. 417.) Defendant offers no reason to believe the one existing test was inaccurate.

Finally, there was evidence that, in order for a person of defendant's size to have a blood-alcohol level of 0.22 percent, he would have to have consumed approximately 15 shots of 86-proof alcohol or 15 bottles of beer.

Thus, there was abundant evidence that defendant drove the SUV while under the influence of alcohol and with a blood-alcohol level over 0.08 percent. There is no reasonable probability that the result would have been any different had defendant's admissions and prior convictions been excluded.

We need not join the parties' debate whether defense witness Killian was credible with respect to the timing of the duo's travels to Lake Francis and Gold Lake. Killian's testimony about how much she and defendant consumed was problematic at best. Killian testified that they each drank four alcoholic beverages during the same time frame, even though their respective breath tests showed wildly divergent amounts of alcohol in their blood. Even if Killian's testimony as to the timeline was credible, reasonable jurors could conclude her testimony about how much defendant drank that day was not. Defendant's claim that he "presented a plausible defense based on his girlfriend's testimony that he was not under the influence" has no merit.

In sum, defendant has not shown any reasonable probability of a more favorable outcome had his trial counsel sought to exclude his prior convictions and his statements acknowledging those convictions. (Salcido, supra, 44 Cal.4th at p. 170.) Any deficient performance by trial counsel could not have been prejudicial.

People v. Ontiveros, 2013 WL 4855057 at *3-5.

////

14

1          b. Discussion

2          The state court properly addressed petitioner's claim under <u>Strickland</u>, as both <u>Salcido</u> and

3   <u>Cox</u>, on which the state court relied, incorporate the standards required by <u>Strickland</u>. <u>Salcido</u>, 44

4   Cal. 4th at 494; <u>Cox</u>, 53 Cal. 3d at 656. The state court reasonably concluded that petitioner

5   failed to show any reasonable probability that absent admission of the prior convictions, the

6   outcome of the proceedings would have differed. Deputy Boyd testified that petitioner's vehicle

7   went over the double yellow line four times. (RT at 16.) Boyd also testified that petitioner drove

8   the SUV over "the double yellow line by the entire length of the car and returned to his lane as if

9   it was cutting a corner." (RT at 62.) After Boyd pulled over the car and asked petitioner for his

10  license, Boyd "immediately noticed a heavy odor of alcohol emitting from [petitioner's] breath

11  and person." (RT at 64.) When Boyd asked petitioner if he had been drinking, petitioner said "he

12  had approximately four beers at Bullards Bar," and "then one more recently in the vehicle." (RT

13  at 65.) Boyd observed that petitioner "had red, bloodshot eyes, they were also watery," and

14  petitioner emitted "the continual smell of alcoholic beverage." (RT at 65.) Petitioner was

15  swaying back and forth during the nystagmus eye test. (RT at 66.) Boyd had to explain the

16  instructions for the eye test twice before the test could be performed. (RT at 67.) Deputy Boyd

17  testified that his opinion that petitioner was intoxicated was not based on one test, but was based

18  on all the field sobriety tests performed at the scene, and on the factors he testified to earlier. (RT

19  89.) Correctional Officer Gary McFarland testified that he could tell petitioner was intoxicated;

20  McFarland could "sense the emission of alcohol from [petitioner's] breath." (RT at 124.)

21  McFarland noted petitioner's eyes were a little bloodshot and watery," and he had a "little bit of

22  slurry speech." (RT at 124.) Petitioner "was under the influence." (RT at 130.) The intoxilyzer

23  administered at the police station at 7:07 p.m. registered one reading of a 0.22 blood alcohol

24  level; all other attempts to obtain a reading were unsuccessful. (RT at 75-76.) Criminalist John

25  Brogden testified that for a male of petitioner's size (six foot tall, 220 pounds), petitioner would

26  have to ingest 15 shots of 86 proof alcohol or 15 beers, and likely would have had a blood alcohol

27  level of .23 at 6:00 p.m. (RT 110-11; 112.) In the face of such strong evidence that petitioner

28  was driving with a blood alcohol level exceeding the .08 legal limit, he fails to demonstrate that

15

1    there is a reasonable probability that the jury would not have convicted him absent admission of

2    the evidence of his prior convictions for driving under the influence.[4]

3           Moreover, the jury was admonished that the prior conviction evidence was only to be

4    considered in deciding whether petitioner sustained the prior convictions.  (CT at 153.)  The jury

5    was specifically directed:  "Do not consider this evidence for any other purpose."  (CT at 153.)

6    "The Court presumes that jurors, conscious of the gravity of their task, attend closely the

7    particular language of the trial court's instructions in a criminal case and strive to understand,

8    make sense of, and follow the instructions given them."  Francis v. Franklin, 471 U.S. 307, 324

9    n.8 (1985); Fields v. Brown, 503 F.3d 755, 782 (9th Cir. 2007) ("We presume that jurors follow

10   the instructions.")

11          Thus, petitioner is not entitled to relief on his first ineffective assistance of counsel claim.

12                        2.  Lay-Witness Testimony

13          Petitioner contends that defense counsel was ineffective based on his failure to challenge

14   allegedly improper lay-witness testimony by Deputy Matthew Boyd.  Petitioner argues that

15   Boyd's testimony concerning petitioner's horizontal gaze nystagmus ("HGN") test was

16   inappropriate because the deputy was not qualified as a scientific expert.  Respondent counters

17   that California courts have permitted law enforcement officers to give opinion testimony based on

18   nystagmus testing for almost two decades.  (ECF No. 12 at 19.)  Because such testing has long

19   been accepted in the scientific community, defendants argue that defense counsel could have

20   concluded that expert qualification was not required, and reasonable jurists would agree that

21   meritless objections are not required by the Sixth Amendment.

22   ////

23   ────────────────────

24   [4]  In addition, the Supreme Court has not decided whether a trial court's failure to bifurcate trial
     on a defendant's prior convictions for driving under the influence implicates due process.
     However, in Spencer v. State of Texas, 87 S. Ct. 648 (1967), the Supreme Court held that the Due

25   Process Clause does not require bifurcation when the prosecutor seeks to admit evidence of a
     defendant's prior convictions to prove a sentence enhancement under a recidivist statute.  Id. at

26   654-55.  The Supreme Court noted:  "Two-part jury trials are rare in our jurisprudence; they have
     never been compelled by this Court as a matter of constitutional law, or even as a matter of

27   federal procedure."  Id. at 568.  Here, petitioner faced felony driving under the influence charges
     because of his prior felony conviction for driving under the influence.  (CT at 18.)

28

1     The last state court decision on petitioner's second ineffective assistance of counsel claim

2   is the California Supreme Court's summary denial of petitioner's habeas petition containing the

3   same claim.  Although the California Supreme Court did not explain its reasoning, its summary

4   denial is a decision on the merits of this claim.  See Stancle, 692 F.3d at 957 & n.3 (a summary

5   denial is presumed to be a denial on the merits of the petitioner's claims).

6     Although the federal court cannot analyze just what the state court did when it issued a

7   summary denial, the federal court must review the state court record to determine whether there

8   was any "reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.  This

9   court "must determine what arguments or theories . . . could have supported, the state court's

10   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

11   arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

12   Court."  Id. at 786.  The petitioner bears "the burden to demonstrate that 'there was no reasonable

13   basis for the state court to deny relief.'"  Walker, 709 F.3d at 939 (quoting Richter, 131 S. Ct. at

14   784).

15                a.   Applicable Legal Standards

16     As set forth above, petitioner must prove both prongs of Strickland:  that counsel's

17   performance fell below an objective standard of reasonableness, and that, had defense counsel

18   objected, the outcome of this proceeding would have been different (prejudice).

19                b.   Discussion

20     After reviewing the record in the light most favorable to the jury's verdict, petitioner fails

21   to demonstrate that petitioner sustained prejudice under Strickland.  Even assuming the admission

22   of the eye test results was error, but for the admission of such evidence, the outcome of the

23   proceedings would not have differed because of the other strong evidence demonstrating that

24   petitioner was driving with a blood alcohol level exceeding the .08 legal limit.  Accordingly,

25   petitioner fails to demonstrate that there was no reasonable basis for the state court to deny relief,

26   and petitioner's second ineffective assistance of counsel claim should be denied.

27   ////

28   ////

### 3. Allegedly Exculpatory Discovery Evidence

Petitioner contends defense counsel was ineffective based on his failure to obtain a copy of the surveillance video allegedly showing Deputy Boyd "banging and beating" on the intoxilyzer machine.  (ECF No. 1 at 21-22.)  Petitioner argues that the video "would have 'clearly' demonstrated how Deputy Boyd's beating and banging on [the] machine rendered the 'aborted reading.'"  (ECF No. 1 at 47.)  Respondent counters that the record established that Boyd "tapped" on the breath machine twice (RT 129), but that defense counsel could reasonably have "feared that admitting the video evidence would have reinforced the consciousness of guilt evidence by providing visual confirmation of petitioner's 12 to 14 attempts to provide a sufficient breath sample."  (ECF No. 12 at 21.)  Respondent points out that defense counsel's closing argument addressed and disputed this portion of the prosecution's case.  (RT 175-76.) Respondent also argues that petitioner failed to demonstrate that omitting such video evidence resulted in prejudice because the "evidence overwhelmingly established that petitioner was sufficiently intoxicated while driving his vehicle."  (ECF No. 12 at 21.)

In his traverse, petitioner argues that "the erroneous use of the unfound[ed] allegations that the petitioner was attempting to circumvent the Breath Intoxilyzer Machine, when jurors had acquitted him of that allegation, defies federal due process."  (ECF No. 16 at 13.)  Petitioner appears to argue that the jury's verdict that petitioner was not refusing to blow into the Breath Intoxilyer Machine demonstrates that the machine was malfunctioning.  (ECF No. 16 at 10.)

The last reasoned decision on this claim of ineffective assistance of defense counsel is the California Supreme Court's summary denial of petitioner's habeas petition containing the same claim.  As explained above, this summary denial is a decision on the merits of this claim, and requires this court to determine whether there was any reasonable basis for the state court to deny relief.  As set forth above, petitioner must demonstrate both prongs of Strickland.

Petitioner fails to demonstrate that the July 5, 2012 video is exculpatory.  While the video might show Deputy Boyd's actions resulted in an "aborted reading," it would also show the machine rendered the one result where petitioner had a .22 blood alcohol level at the police station.  Although the jury found petitioner not guilty of refusing to take a chemical test (CT 165),

1   such verdict does not address or confirm petitioner's belief that Deputy Boyd's actions somehow

2   caused the machine to not operate correctly.  Indeed, senior criminalist John Brogden testified

3   that the machine was tested on July 3, 7, and 13, 2012, the machine was working correctly, and

4   there was nothing wrong with the machine.  (RT 120-21.)

5        In any event, viewing the record in the light most favorable to the jury's verdict,

6   this ineffective assistance of counsel claim also fails on the prejudice prong of <u>Strickland</u>.

7   Petitioner fails to demonstrate that had the video of Deputy Boyd administering the breath test at

8   the police station been admitted at trial, the outcome of these proceedings would be different.

9   Officer McFarland testified that he did see Boyd tap the machine twice "but he wasn't . . . overly

10  banging on it."  (RT at 129.)  The jury was made aware that numerous attempts to obtain breath

11  test results had failed, and criminalist John Brogden explained the meaning of the machine's "test

12  aborted" reading, and noted that it did not reflect the cause for the failed reading.  (RT 115-16.)

13  Brogden further opined that "[c]onsidering the totality of the information that the machine's been

14  working properly since this day, . . . [Boyd's hitting the machine with his hand] would have no

15  effect on this instrument."  (RT 116.)  Thus, admitting the video would not have discounted the

16  .22 blood alcohol level registered by the machine, or petitioner's poor performance on the field-

17  sobriety tests, or the other objective signs of intoxication observed by Deputy Boyd and

18  Correctional Officer McFarland (RT 62-68; 123-24).  Moreover, the jury's "not guilty" verdict to

19  the charge of failure to take a chemical test, raises an inference that the jury did not believe that

20  petitioner was attempting to alter the test results.  But despite the "not guilty" verdict as to the

21  chemical test, the jury still found petitioner guilty of driving under the influence.  These verdicts

22  support this court's finding that admission of the video would not have changed the outcome of

23  the proceedings in petitioner's favor.

24       Thus, petitioner is not entitled to habeas relief on his third ineffective assistance of

25  counsel claim.

26            4.  <u>Cumulative Error</u>

27       The petition does not specifically set forth a claim of cumulative error based on defense

28  counsel's alleged ineffective assistance of counsel.  (ECF No. 1 at 4.)  However, the petition

1  refers to Appendix A, in which petitioner states "[i]t is not one error standing alone that

2  constitutes ineffective [assistance of counsel], it is a cumulative effect of errors that renders

3  ineffective assistance of counsel. (ECF Nos. 1 at 46; 16 at 12.)

4       The Ninth Circuit has concluded that under clearly established United States Supreme

5  Court precedent the combined effect of multiple trial errors may give rise to a due process

6  violation if it renders a trial fundamentally unfair, even where each error considered individually

7  would not require reversal. Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Donnelly

8  v. DeChristoforo, 416 U.S. 637, 643 (1974), and Chambers v. Mississippi, 410 U.S. 284, 290

9  (1973)). "The fundamental question in determining whether the combined effect of trial errors

10 violated a defendant's due process rights is whether the errors rendered the criminal defense 'far

11 less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or

12 influence' on the jury's verdict." Parle, 505 F.3d at 927 (quoting Brecht v. Abrahamson, 507

13 U.S. 619, 637 (1993)). See also Hein v. Sullivan, 601 F.3d 897, 916 (9th Cir. 2010) (same).

14      This court has addressed each of petitioner's alleged ineffective assistance of counsel

15 claims and has concluded that no error of constitutional magnitude occurred. This court also

16 concludes that the alleged errors, even when considered together, did not render petitioner's

17 defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on

18 the jury's verdict." Accordingly, petitioner is not entitled to relief on his claim of cumulative

19 error.

20      B. Alleged Prosecutorial Misconduct

21      Petitioner claims that his due process rights were violated because the prosecution

22 withheld the allegedly exculpatory video surveillance evidence discussed above. Petitioner

23 claims that "from [the] time of arraignment," the prosecutor was "put on notice" that petitioner

24 wanted the video of Deputy Boyd striking the intoxilyzer, yet intentionally withheld the video,

25 allegedly depriving petitioner of a meritorious defense. (ECF No. 1 at 46-47.) Petitioner

26 contends that the "constant banging" on the intoxilyzer "caused an aborted test over & over."

27 (ECF No. 16 at 16.) Respondent argues that the video evidence was not "material," and could not

28 have had a favorable effect on the jury's verdict because it is unlikely the jury would have

1    attributed the .22 blood-alcohol reading to Boyd's tapping of the intoxilyzer.  But even if it had,

2    respondent contends that the verdict would remain the same based on the evidence of petitioner's

3    erratic driving (RT 62), objective signs of intoxication (RT 62-68, 123-24), poor performance on

4    field-sobriety tests (RT 65-67), and admission to drinking while behind the wheel (RT 65).  (ECF

5    No. 12 at 22.)

6         The suppression of evidence favorable to the accused "violates due process where the

7    evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

8    the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  There are three essential

9    components of a Brady violation:  "The evidence at issue must be favorable to the accused, either

10   because it is exculpatory, or because it is impeaching; that evidence must have been suppressed

11   by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v.

12   Greene, 527 U.S. 263, 281-82 (1999).  To establish prejudice under Brady, courts look to the

13   materiality of the suppressed evidence.  Id. at 282.  "[E]vidence is 'material' within the meaning

14   of Brady when there is a reasonable probability that, had the evidence been disclosed, the result

15   of the proceeding would have been different."  Cone v. Bell, 556 U.S. 449, 469-70 (2009).

16        First, petitioner concedes he was aware of the video at the time of his arraignment.

17   Evidence is not "suppressed" by the police or prosecution where the defendant is, or reasonably

18   should have been, aware of that evidence.  See United States v. Bracy, 67 F.3d 1421, 1428-1429

19   (9th Cir. 1995) (finding that the government's "disclosure provided all the information necessary

20   for the defendants to discover the alleged Brady material on their own, so the government was not

21   guilty of suppressing any evidence favorable to defendant"); United States v. Aichele, 941 F.2d

22   761, 764 (9th Cir. 1991) ("When, as here, a defendant has enough information to be able to

23   ascertain the supposed Brady material on his own, there is no suppression by the government.");

24   United States v. Dupuy, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) ("[S]uppression by the

25   Government is a necessary element of a Brady claim, [so] if the means of obtaining the

26   exculpatory evidence has been provided to the defense, the Brady claim fails.") (internal citations

27   omitted).  Petitioner knew about the video evidence early in the proceedings, and defense counsel

28   could have subpoenaed its production.

1  Second, just as petitioner failed to demonstrate that he suffered <u>Strickland</u> prejudice by the

2  omission of the video from evidence, petitioner fails to demonstrate that the video was material,

3  as defined under <u>Brady</u>. Viewing the record in the light most favorable to the jury's verdict,

4  petitioner's guilt was supported by the direct evidence of the .22 blood alcohol level registered by

5  the intoxilyzer, petitioner's poor performance on the field-sobriety tests, including the eye test

6  and the Romberg standing balance test (RT 10), petitioner's erratic driving, as well as the other

7  objective signs of intoxication observed by Deputy Boyd and Correctional Officer McFarland

8  (RT 62-68; 123-24). Because there was such strong evidence demonstrating that petitioner was

9  driving with a blood alcohol level exceeding the .08 legal limit, the omitted video is not material

10  because its disclosure would not have presented a probability sufficient to undermine confidence

11  in the outcome of the trial. <u>See</u> <u>Benn v. Lambert</u>, 283 F.3d 1040, 1053 (9th Cir. 2002)

12  ("Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of

13  the trial.").

14  Thus, petitioner is not entitled to federal habeas relief on his claim of prosecutorial

15  misconduct.

16  VI. <u>Evidentiary Hearing</u>

17  Petitioner contends he is entitled to an evidentiary hearing because the California Supreme

18  Court deprived him of his ability to fully develop his allegations by summarily denying his

19  petition for writ of habeas corpus. (ECF No. 16 at 9.) Petitioner claims, in conclusory fashion,

20  that an evidentiary hearing is necessary to "adequately" and "fully develop his allegations." (ECF

21  No. 16 at 13, 15.)

22  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

23  following circumstances:

24  (e)(2) If the applicant has failed to develop the factual basis of a
       claim in State court proceedings, the court shall not hold an
25  evidentiary hearing on the claim unless the applicant shows that--

26  (A) the claim relies on--

27  (I) a new rule of constitutional law, made retroactive to cases on
       collateral review by the Supreme Court, that was previously
28  unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

    Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A federal court must take into account the AEDPA standards in deciding whether an evidentiary hearing is appropriate. Schriro, 550 U.S. at 474. A petitioner must also "allege[] facts that, if proved, would entitle him to relief." Schell v. Witek, 218 F.3d 1017, 1028 (9th Cir. 2000).

    The court concludes that no additional factual supplementation is necessary and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. In addition, for the reasons described above, petitioner has failed to demonstrate that the state courts' decision on his claims is an unreasonable determination of the facts under § 2254(d)(2). See Schriro, 550 U.S. at 481. Accordingly, an evidentiary hearing is not necessary or appropriate in this case.

VII.  Conclusion

    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to

1   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

2   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

3   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

4   service of the objections.  The parties are advised that failure to file objections within the

5   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

6   F.2d 1153 (9th Cir. 1991).

7   Dated:  April 15, 2015

8

9   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

10

11

    /onti1423.157

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28